### RUGGLES v. O'BRIEN et al.

(Supreme Court, Appellate Division, Third Department. January 14, 1903.)

1. EXECUTORS AND ADMINISTRATORS—USE OF TRUST FUNDS—ACTION TO RECOVER SECURITIES—NATURE AND FORM.

Where one of the executors of an estate purchased stock in the name of himself and his wife, and in an action against pledgees to recover the same by the coexecutor, after such executor had been removed, it was alleged that the stock was purchased with the assets of the estate, and that such removed executor and his wife had transferred all their interest in the stock to plaintiff, the action should be treated as one in equity for the adjustment of the interest of the parties, and not an action for conversion.

2. SAME—COMPLAINT—CERTAINTY.

In an action to recover stock alleged to have been purchased by an executor in his own name with the assets of the estate, a complaint alleging that the stock was purchased "in whole or in part" with the funds of the estate, but which did not allege that the stock was wholly purchased, and, if only part had been purchased, which part, or how much, had been purchased with the funds of the estate, was not sufficiently definite.

3. SAME.

Where a complaint in an action to recover stock alleged that it was purchased by one of the executors of an estate with funds of the estate, and that the stock had been pledged by such executor, the complaint should specifically allege an offer to the pledgee to repay the amount advanced by him, and state whether such offer had been accepted or refused.

4. SAME.

Where the complaint charged that a coexecutor, who had been removed, purchased stock sued for in his own name with the funds of the estate, which he pledged for his own debt, and alleged that such executor and his wife transferred their interest in the stock to plaintiff, the complaint should also allege the date of such transfer.

Appeal from special term, Broome county.

Action by Martin Ruggles, as executor of the will of Jane Bush, deceased, against Ellen O'Brien, as administratrix with the will annexed of the estate of Charles F. O'Brien, and others. From an order denying defendants' motion to have the complaint made more definite and certain, they appeal. Reversed.

It appears by the complaint that one Jane Bush died in 1895, leaving a will. The will was duly admitted to probate April 26, 1895, and letters testamentary were duly issued to one Virgil P. McMaster and the plaintiff. On the 25th day of March, 1897, the letters testamentary issued to said McMaster were revoked. The complaint also states that McMaster "used and invested certain moneys, funds, and assets of said estate in the purchase of 2,000 shares of the common stock" of the Southern Railway Company, and states the numbers of the certificates representing said stock; that the certificates for said stock "were taken and held by said McMaster or his wife, M. E. McMaster, or both, but which said certificates and shares were the property of, and belonging to, in whole or in part, the estate of said Jane Bush"; that "thereupon and thereafter said Virgil P. McMaster borrowed from the Binghampton Trust Company ⁕ ⁕ ⁕ about the sum of $20,000, for which he gave said bank his promissory note or notes, and to secure the payment thereof pledged to and with said trust company all of said shares or certificates of stock above mentioned, for which purpose he delivered the same to said trust company as collateral security for such purpose"; that "thereafter said McMaster from time to time converted the assets of said estate into money, and paid over the proceeds thereof from time to time to said trust company, to apply upon his said loan and notes, ⁕ ⁕ ⁕ so that he was indebted to said bank in December, 1896, and January, 1897, in a small amount"; that "in or about the month of December, 1896, or the month of January, 1897, one Charles F. O'Brien and one Edmund O'Connor, both of whom are now deceased, took and received all of said certificates and shares of stock from the said trust company without right and authority, and well knowing that the same, or a large part thereof, belonged to said estate of Jane Bush, and well knowing the manner in which said stock had been purchased and paid for, and well knowing and with full knowledge of the fact that said stock belonged to said estate, and that said estate had a valid and legal claim thereon, by reason of the same having been purchased with trust moneys, and by reason of said McMaster having reduced his indebtedness to said trust company, for which said stock had been pledged as collateral as aforesaid, with moneys belonging to said estate, and that at said time the estate of said Jane Bush was the owner of said stock or a large portion thereof, and had an interest in and a good and valid equitable lien upon and against said stock, and was entitled to the possession of said stock and certificates and the proceeds thereof by reason of the facts hereinbefore set forth, of all of which said O'Connor and said O'Brien had full knowledge at the time when they took and received said stock and certificates as aforesaid from said trust company"; that, after said O'Brien and O'Connor took and received said shares of stock, and while the same were in their possession, they were notified of the facts and circumstances set forth in the complaint, and a demand was made upon them and each of them to turn over, surrender, and deliver to the plaintiff said shares and certificates of stock, and they were further forbidden from selling, assigning, transferring, or disposing of the same, and that said O'Brien and O'Connor refused, and ever since then have refused, to turn over and deliver such stock to the plaintiff, "and that they, or one of them, stated that they or he had advanced certain moneys on account of said stock or shares, and an offer was then made them, or one of them, on behalf of this plaintiff and of said estate to repay such moneys so alleged to have been advanced, and that they refused to accept the same, or to turn over such stock or shares"; that the said Virgil P. McMaster and his wife duly transferred to the plaintiff whatever right, title, and interest they or either of them ever had in or to any portion of said stock or certificates; that said Edmund O'Connor died on the 15th day of July, 1898, leaving a will, which has been

duly probated, and the defendants Bridget O'Connor, William O'Connor, and Thomas K. Keenan have been duly appointed executors thereof; that said Charles F. O'Brien died on the 26th day of January, 1901, leaving a will, which has been duly probated; and the defendant Ellen O'Brien has been duly appointed administratrix with said will annexed; that after the said transfer by McMaster and wife, and after the death of said O'Connor and the said O'Brien, and the appointment of their executors, respectively, a demand was made upon said executors and executrices, and each of them, for said stock and said certificate, all of which was refused, and the said defendants have neglected and refused, and still neglect and refuse, to turn over to the plaintiff such certificates or shares, or to account to him for the value thereof. Plaintiff demands judgment that he be adjudged the owner and entitled to possession of the certificates of stock; that defendants be directed to deliver the same to plaintiff, or, in case they cannot be delivered, that defendants account for the value thereof.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and CHESTER, JJ.

Curtiss, Arms & Keenan (T. L. Arms, of counsel), for appellants.
Millard & Stewart (S. C. Millard, of counsel), for respondent.

CHASE, J. Some doubt is expressed by counsel as to the purpose of this action. We will first consider its purpose. The facts stated in the complaint show that the stock was issued in the name of McMaster or his wife. Neither McMaster nor plaintiff, as executors of the will of Jane Bush, ever had a legal title to any of said stock. Whether the money to purchase all or only a part of said stock was taken by McMaster from the assets of said estate, the claim of the plaintiff by reason thereof is equitable only. If the money was used from the assets of said estate in paying the note or notes of McMaster, for which said stock was held as collateral, plaintiff's claim on the stock, if any, by reason thereof, is equitable only. The defendants' testators, or one of them, claimed to have advanced certain moneys on account of said stock. It may be assumed, we think, that the balance due on the McMaster note or notes in the trust company was paid, or that said note or notes were purchased, at the time of the receipt of said certificates of stock then held as collateral to said note or notes. Defendants' interest in the stock, if any, by reason of holding said note or notes, will doubtless be insisted upon by them. Except for the alleged transfer of their interest in said stock by McMaster and wife to the plaintiff, it probably would not be suggested that this was an action for conversion. If, on the trial of the action, plaintiff should fail to establish the transfer of the stock by McMaster and wife to him, or if it should then appear that McMaster and wife had prior thereto sold all their right, title, and interest in the stock to the defendants or others, plaintiff would doubtless insist upon his equitable claim or claims arising by reason of the facts set forth in the complaint. The action should be deemed an action in equity for the ascertainment and adjustment of the interest of all parties to the action, and not an action for conversion. The precise meaning of some of the allegations of the complaint is not apparent. It is not apparent whether plaintiff claims that McMaster purchased the whole or only a part of said stock with money of said estate. The complaint should state specifically whether all

of said stock was purchased with money of said estate or only a part thereof, and, if only a part thereof, which part was so purchased. If all of said stock was purchased with the money of said estate, the claim of plaintiff relates to all of said stock, and the statement in the complaint that said certificates of stock became the property, in whole or in part, of said estate, is inconsistent, indefinite, and uncertain. If plaintiff claims that the stock belongs wholly to him apart from the transfer thereof by McMaster and wife, then the allegations of the complaint relating to the misappropriation by McMaster of money of the estate and the payment thereof upon his note or notes is immaterial. It is not apparent whether plaintiff claims to have an equitable lien upon said stock by reason of the moneys misappropriated by McMaster from said estate and paid on said note or notes. If said stock was not wholly purchased with money of the estate, the complaint should state not only which part thereof was so purchased with moneys of the estate, but it should state specifically the dates and amounts of the moneys misappropriated from said estate, and paid upon said note or notes for which an equitable lien is claimed on that part of the stock that had not theretofore been so purchased with money of the estate. It is not apparent whether plaintiff claims that Edmund O'Connor stated to the plaintiff in his lifetime that he had advanced certain moneys on account of said stock, or whether an offer was then made by the plaintiff to said Edmund O'Connor to repay to him the moneys so alleged to have been advanced on account thereof, and whether said offer was refused by said Edmund O'Connor. The complaint should state specifically what, if any, offer was made to said Edmund O'Connor to repay to him moneys alleged to have been advanced on account of said stock, and, if an offer was so made to him, whether the same was accepted or refused by said O'Connor. And said complaint should also state specifically the date when said McMaster and wife transferred to the plaintiff their right, title, and interest in and to said stock. Rosenthall v. Rosenthall, 19 Civ. Proc. R. 56, 10 N. Y. Supp. 455.

Order should be reversed, with $10 costs and disbursements, and order to make the complaint more definite and certain should be granted in accordance with this opinion, with $10 costs. All concur.